MERCIER et al., Respondents, vs. LETCHER et al., Appellants.

1. C. M. having a Spanish concession and survey, died in 1802, leaving five children, and a widow, who afterwards married one J. M. C. J. M. C. claiming to be the representative of C. M., (whose widow, he stated in the notice of claim presented by him, he had married,) presented the claim for confirmation to the old board of commissioners; but made no proof whatever of any derivation of title from C. M. to himself. The board, October 9, 1810, confirmed the claim to C. M. *Held,* that this confirmation was not void, but enured to the benefit of the representatives of C. M. It did not enure to the benefit of J. M. C. (Hogan v. Page, ante, affirmed.)

### Appeal from St. Louis Land Court.

*S. Reber,* for appellants. 1. The confirmation to Charles Mercier is void, because he was dead before the claim was presented to the recorder. An entry in the name of a dead man is void. (6 Pet. 261; 3 A. K. Marsh. 1080; 4 Pet. 345.) So also a patent. (12 Pet. 297–8; 1 Mo. 540; 4 Bibb, 385; 10 How. 373.) 2. If the confirmation be held to be a confirmation to the representatives of Charles Mercier, then it is a confirmation to Jean Marie Courtois, he having claimed the land by virtue of his marriage with the *widow* of Mercier, and filed the claim before the recorder. 3. The partition proceedings under which the plaintiffs claim are void. (Jackson v. Brown, 3 Johns. 459.)

*B. A. Hill,* for respondents.

RYLAND, Judge, delivered the opinion of the court.

This was an action in the nature of ejectment, to recover possession of a common field lot in the common field of St. Ferdinand. The plaintiffs claimed title under Charles Mercier, deceased, in whose name the land was (claimed to be) confirmed by the old board, and surveyed.

The deceased, Charles Mercier, died in 1802, leaving a widow, who married Jean Marie Courtois, in the same year, and five children, Charles Mercier, one of the plaintiffs, and four daughters.

Jean Marie Courtois, claiming a larger tract, of which the land in controversy was part, as the representative of the deceased Mercier, whose widow (he said in his claim) he had married, gave notice of his claim to the recorder of land titles, and filed with the notice the Spanish survey of the land which had been made for Mercier. The papers were duly recorded by the recorder in the books of his office.

On the 19th of August, 1806, the board acted on the claim of "The representatives of Charles Mercier"—received proof of cultivation of the land claimed, and rejected it. The said proceedings of the board were recorded in book No. 1, p. 477. On the 9th of October, 1810, the board took up the claim again, and referring to the said book No. 1, p. 477, confirmed it to "Charles Mercier," and on the same day the board issued a patent certificate in the name of "Charles Mercier."

All the daughters of Mercier married between the years 1810 and 1818, and were under the disability of coverture until within less than twenty years before suit was brought.

In 1848, the said five children of Mercier instituted proceedings in the St. Louis Circuit Court, for partition of the land, and the part in controversy was sold in that proceeding and conveyed to the plaintiffs in 1850.

In 1805, Jean Marie Courtois and wife (former widow of Mercier) conveyed the land in controversy, with general war-

ranty to Richard Sappington, and defendants have Sapping-
ton's title.

In 1824, Mercier, the plaintiff, conveyed his interest in the
land to Jean Marie Courtois, and defendants have also that
title. The defendants and those under whom they claim have
been in continuous and adverse possession of the land since the
year 1814.

The court, sitting as a jury, found the facts as above stated,
and gave judgment in favor of the plaintiffs for four-fifths of
the land. The defendants filed their motion for a review, which
being overruled, they bring the cause to this court by appeal.

From this statement, it appears that some of the questions
arising on this record are the same as those which have just
been decided by this court in the case of Hogan v. Page. The
original grant was to Charles Mercier. At the time of the con-
firmation, he had been dead for several years. Courtois, who
married the widow of Charles Mercier, delivered to the recorder
of land titles for the territory of Louisiana, a notice in writing
as follows, to-wit: "Jean Marie Courtois, representative of
Charles Mercier, whose widow he has married, claimed a tract
of ·———— arpens of land on the right or south bank of the Mis-
souri, surveyed for said Mercier, as per the following certifi-
cate." Courtois delivered with the notice a plat and survey of
the said land, made by Antoine Soulard, for the said Mercier,
on the 5th March, 1797, by authority of a letter from the lieu-
tenant governor, Zenon Trudeau. This notice and survey was
recorded by the recorder of land titles, in a book kept for that
purpose. C. Mercier died 28th June, 1802, leaving a widow
and five children — four daughters and a son — bearing his
father's name. At first, the board rejected the claim. Subse-
quently, on the 9th October, 1810, the following further pro-
ceedings were had before the said board: " Certificate No.
496, Charles Mercier claiming 208 acres and 48-100ths of an
acre of land, (see book No. 1, p. 477,) produces to the board
a plat of survey of St. Ferdinand fields, on which claimant is
No. 25. The board confirm to Charles Mercier 208 48-100ths

acres, as described in a plat of survey executed by Silas Bent, principal deputy, and dated 28th November, 1809, on file with the recorder." And on the 9th October, 1809, said board of commissioners issued certificate No. 496, as follows : " We, the undersigned commissioners for ascertaining and adjusting the titles and claims to land in the territory of Louisiana, have decided that Charles Mercier, original claimant, is entitled to a patent under the provisions of the 4th section of an act of congress, passed 3d of March, 1807, for 208 acres 48-100ths of land, situated in the district of St. Louis, St. Ferdinand fields, as described," &c.

This confirmation, according to the opinion of this court, did not enure to Courtois. He had married the widow of the original grantee, and thereby claimed as his representative. He produced no evidence of title from Mercier. The board did not make this confirmation to the legal representatives of Charles Mercier by express terms, but confirmed the grant to Mercier himself. The board knew that Mercier was dead. Curtois had informed them that he claimed the land as representative of said Mercier, because he had married his widow. They well knew that this did not make him the legal representative of Mercier. They refused to recognize Courtois as such, and confirmed the grant to *Charles Mercier*. This confirmation can not enure, under our view of the law, to Courtois. He filed no evidence of title—no intermediate conveyances from the original grantee. His marriage of the widow gave him no right to the land.

The question now arises, is this confirmation valid ? Has it any legal operation ? If we apply to it the rules of construction which common law lawyers use in construing grants at common law, we shall at once pronounce it invalid. But when we look at the powers and duties of the commissioners, the object of their creation, the causes which required such a tribunal, and the matters which were necessarily to come before them for decision, we unhesitatingly pronounce the confirmation good and valid in law. What is it that is confirmed ? It is the original right or grant which had been made by the Spanish authorities

to Charles Mercier. The board of commissioners did not make grants—they had no power to grant. They were to decide upon grants heretofore made by the French and Spanish authorities, and when they decide and confirm the grant, they confirm the original grant as it was made. They say this grant to Charles Mercier is confirmed. They thereby decide that then, that is, on the 9th October, 1810, this grant is a valid title against the United States ; they by their confirmation in effect declare, at the time it is pronounced, that the grant to Charles Mercier is a valid and subsisting title against the United States. If this be the effect of their decision, and that it is there is scarcely a doubt, then, as it declares the grant good as against the United States, it must, by operation of law, be good in favor of those who have by law the right to claim it under Charles Mercier, either as grantees, devisees or heirs. In this case there are no persons claiming under this grant from Mercier except his heirs, and they are entitled to it. Courtois has no right, nor has his widow. The right then being in the heirs of Mercier; they had the power to have the property divided among them by parti- tion, and a sale upon the proceedings for partition among the heirs of Mercier is good and sufficient to pass the title to the purchaser at such sale of all the heirs who were parties to the proceedings.

The effect of the deed of Charles Mercier, the son, to Cour- tois in 1824, was to pass to him his title as one of the heirs. Upon the whole case, we think the court below decided cor- rectly, and its judgment is affirmed ; the other judges con- curring.